UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-62556-CIV-SINGHAL

SOPHONIE PIERRE,

      Plaintiff,

v.

AIDS HEALTHCARE FOUNDATION, INC.,

      Defendant.

_____/

### ORDER

**THIS CAUSE** is before the Court on Defendant AIDS Healthcare Foundation, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion") (DE [36]) and its Statement of Undisputed Material Facts (DE [37]), both of which were filed on July 17, 2020.  On August 14, 2020, Plaintiff Sophonie Pierre filed her Response to the Motion (the "Response") (DE [48]) and her Statement of Disputed Facts (DE [49]).  On August 31, 2020, the Defendant filed its Reply in support of its Motion (the "Reply") (DE [52]) and its Reply to the Plaintiff's Statement of Disputed Facts (DE [53]).  Accordingly, the matter is now ripe for review.

## I.    BACKGROUND

Defendant AIDS Healthcare Foundation, Inc. ("AHF") is a non-profit organization providing medical care to millions of people who have contracted the HIV/AIDS virus. AHF operates over sixty retail pharmacies and two central fill pharmacies in the United States.  One of AHF's two central fill pharmacies is located in Fort Lauderdale, Florida (the "Central Fill Pharmacy").  The Central Fill Pharmacy processes prescriptions for

AHF's retail pharmacies located in the eastern half of the United States.  Like every AHF pharmacy, the Central Fill Pharmacy is overseen and managed by a Pharmacist-in-Charge (the "PIC").

AHF hired Plaintiff Sophonie Pierre ("Pierre") in 2016 to work as a pharmacy technician at the Central Fill Pharmacy.  In April 2018, AHF hired Briana Moe ("Moe") as the PIC of the Central Fill Pharmacy.  Moe reports directly to AHF's Chief Pharmacy Officer, Dr. Scott Carruthers ("Dr. Carruthers"), who manages AHF's domestic pharmacy operations and has been employed by AHF for over a decade.

On November 29, 2018, Pierre sent an email (the "November 29 Email") (DE [37-12]) to AHF's Human Resources Department (the "HR Department"), in which she penned her "concerns and complaints" in considerable detail.  Pierre's "concerns and complaints," which she listed in eight numbered paragraphs, largely centered on Moe's "terrible behavior," as the PIC of the Central Fill Pharmacy.  (Resp. (DE [48]) at 5).  For instance, Pierre complained: (i) Moe lacked empathy; (ii) Moe neither adequately communicated with, nor listened to, other Central Fill Pharmacy employees; (iii) Moe made rude comments about Central Fill Pharmacy employees, such as calling Pierre a "loud mouth" and calling another employee a "dumb blonde"; (iv) Moe made inappropriate comments, such as joking that employees were stealing controlled substances; and (v) Moe treated certain Central Fill Pharmacy employees more favorably than others.  Most relevant here, though, is the sixth-numbered paragraph of the November 29 Email, in which Pierre complained about Moe's habitual use of other employees' workstations while those employees were still logged into their Symphony[1] account:

---

[1] Symphony is a computer system that is used to process prescriptions.  (DE [37] at ¶ 8; DE [49] at ¶ 8). Symphony records the various actions done on each prescription.  *Id.*  Every employee at the Central Fill

> In the time that [Moe] has been here, there have been **several** instances in which she has either attempted or have [sic] actually completed work under someone else's name. From changing the priority of an order(s) [sic] or filling an actual patients [sic] order. She has been called out on this many times, but yet continues to do so. It seems to be some kind of way of making sure that there is nothing directly done under her name and that responsibility of any error that may occur does not fall back on her in the future.

(DE [37-12]) (emphasis in original).

AHF conducted an internal investigation into the "concerns and complaints" that Pierre listed in her November 29 Email.[2]  As part of its investigation, AHF interviewed fifteen employees, including Pierre, between December 19, 2018 and January 4, 2019. Indeed, several employees who were interviewed conveyed the same concerns and complaints that Pierre listed in her November 29 Email, such as that Moe gave certain employees preferential treatment, made inappropriate and unprofessional comments, and worked under other employees' Symphony credentials.

AHF's internal investigation took approximately three weeks, concluding on or around January 11, 2019.  The HR Department compiled a record of the investigation, and made two recommendations—first, that Moe be placed on a Performance Improvement Plan ("PIP"), which is disciplinary in nature, and second, that Moe receive management and communication training.  *See* (DE [49-1] at 24–40).  Dr. Carruthers

---

Pharmacy has their own login and password to Symphony. *Id.* Employees are required to log off Symphony when they leave their workstations. *Id.*

[2] AHF's internal investigation also focused on complaints made another pharmacist at the Central Fill Pharmacy, Shannon Hammer ("Hammer").  Hammer first submitted a very lengthy set of complaints to AHF's HR Department via email on December 3, 2018.  Hammer then reiterated her grievances to the HR Department in two additional emails on December 31, 2018 and January 31, 2019.  Like Pierre, Hammer complained that (i) Moe's leadership was inept; (ii) Moe had a history of working under other employees' Symphony credentials; and (iii) Moe gave some employees preferential treatment over others.  However, unlike Pierre, Hammer also complained in great detail that Moe had violated pharmacy laws regarding to missing controlled substances. *See* (DE [49-3] at 13–24).

decided to forego a PIP, but ordered that Moe undergo management and communication training.

On January 16, 2019—just five days after AHF's internal investigation concluded—Pierre sent a second email (the "January 16 Email") (DE [37-15]) to AHF's HR Department, in which she lodged yet another complaint about Moe's use of another employee's Symphony credentials:

> [A]bout 30+ minutes ago I observed [Moe] filing [sic] a prescription under an Agency Pharmacist credentials. At the time I was in shelf 1 pulling expired meds for the month, when she approached him (Muneer N.) and asked if she could "Look at something real quick". He walked away and she then proceeded to print out a vial label, filled the Rx, took the necessary images and completed the fill. She then walked it over to the shipping area for it to be packaged later on. Needless to say, this is a gross violation of not only [AHF] policy and procedure, but a violation of pharmacy law. Individual logins are provided to all employees for a reason and this is clear misuse of that, especially to a fellow pharmacist. Below I have attached a screenshot of the status trail of that Rx with the time stamp of the incident in question. Rx number for future reference is #246552 PT initials J.L. Store #432.

*Id.*

Shortly after Pierre's January 16 Email, Moe decided to conduct an audit into the timekeeping practices of every pharmacy technician who worked at the Central Fill Pharmacy, including Pierre.  The audit focused on a four-day period—from January 22, 2019 through January 25, 2019.   AHF explains that the audit revealed that three pharmacy technicians, including Pierre, violated AHF's Timekeeping Policy.  As to Pierre, AHF states that she falsified her timekeeping practices to the extent of approximately five hours and nine minutes during the four-day audit period.[3]  Following the audit, Moe recommended to AHF higher-ups that Pierre's employment be terminated for her violation

---

[3] AHF also states that the timekeeping violations of the other two pharmacy technicians amounted to only fifteen minutes or less—a much less severe violation than that of Pierre's.

of AHF's Timekeeping Policy.   Dr. Carruthers, seemingly in agreement with Moe's recommendation, terminated Pierre's employment on January 29, 2019.  Pierre disputes that she violated AHF's Timekeeping Policy and argues that AHF's stated reasons for performing the timekeeping audit and for terminating her employment were pretextual.

Pierre filed her complaint (the "Complaint") (DE [1-1]) in state court on August 30, 2019.  AHF subsequently removed the case to federal court under diversity jurisdiction.[4] Pierre's sole count in her Complaint is a claim under Florida's private sector Whistleblower Act (the "FWA"), section 448.101, *et seq.*, Florida Statutes.

On July 17, 2020, AHF filed the instant Motion.  Among other things, AHF argues that, for Pierre's FWA claim to survive summary judgment, she must first show the conduct to which she objected actually violated a "law, rule, or regulation," as those terms are defined in section 448.101(4), Florida Statutes.  Pierre, AHF argues, has not met that burden.  For the reasons set forth below, the Court agrees with AHF and therefore grants the Motion.

## II.   **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[5] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

---

[4] Pierre did not amend her Complaint after the removal.
[5] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party—here, Pierre—and draw all reasonable inferences in that party's favor.  *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014).  However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf."  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).  "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments."  *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

## III.  DISCUSSION

A retaliation claim under the FWA, such as Pierre's claim here, is subject to the same *McDonnell-Douglas* burden-shifting framework applicable to retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  *See, e.g.*,

*Berber v. Wells Fargo, NA*, 798 Fed.Appx. 476, 478 (11th Cir. 2020) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000)).   Under this burden-shifting framework, Pierre must first establish a *prima facie* case of her FWA claim, which requires demonstrating the following three elements: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the protected activity.  *Graddy v. Wal-Mart Stores East, LP*, 237 F. Supp. 3d 1223, 1226 (M.D. Fla. 2017) (citing *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. 2d DCA 2015)).  If Pierre makes such a showing, the burden shifts to AHF to articulate a legitimate, non-retaliatory reason for its adverse employment action.  *Berber*, 798 Fed. Appx. at 478–79.  And if AHF makes that showing, the burden shifts back to Pierre, who must show AHF's proffered legitimate, non-retaliatory reason for its adverse employment action is merely pretext for unlawful retaliation.  *Id.*

Here, Pierre has failed to establish that she engaged in a statutorily protected activity—the first element of a *prima facie* FWA case.  Because that issue is, on its own, dispositive in favor of AHF and against Pierre, the Court need not address the remainder of AHF's arguments.  The Court therefore finds AHF is entitled to judgment as a matter of law.

### A. To Establish that She Engaged in a Statutorily Protected Activity, Pierre Must Show that the Conduct to which she Objected Violated a Law, Rule, or Regulation.

The parties disagree on what is required for Pierre to satisfy her burden for the first element of her *prima facie* claim.  Pierre has brought her claim under section 448.102(3), Florida Statutes, of the FWA, which provides that "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . .

[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Pierre argues, to show that she engaged in a protected activity under this provision of the FWA, she need only show she had a *good faith, objectively reasonable belief* the conduct to which she objected violated a law, rule, or regulation. *See Aery v. Wallace Lincoln-Mercury, LLC*, 118 So.3d 904, 916 (Fla. 4th DCA 2014) (adopting the good faith, objectively reasonable belief standard).[6] AHF, on the other hand, argues for a more rigorous burden that would require Pierre to show the conduct to which she objected was an *actual* violation of a law, rule, or regulation. *See Kearns v. Farmer Acquisition Co.*, 157 So.3d 458, 465 (Fla. 2d DCA 2015) (rejecting *Aery* and instead adopting the actual violation standard).[7] This Court finds AHF's argument more persuasive and concludes the actual violation standard applies to Pierre's FWA claim.

"When intermediate state appellate courts have issued conflicting interpretations of state law, and the state's highest court has not resolved the conflict, a federal court must discern how the state high court would rule if confronted with the issue." *Obukwelu v. Tallahassee Memorial Healthcare, Inc.*, 2015 WL 11110552, at *3 (N.D. Fla. June 25, 2015) (citing *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1366 (S.D.

---

[6] Several district courts within the Eleventh Circuit have adopted the good faith, objectively reasonable belief standard announced in *Aery*. *See, e.g.*, *Buzzell v. Florida Keys Ambulance Service, Inc.*, 2020 WL 2071956, at *4, n.2 (S.D. Fla. Apr. 29, 2020); *Nardella v. Atlantic TNG, LLC*, 2020 WL 2331179, at *11 (M.D. Fla. May 11, 2020); *Ritenour v. AmeriGas Propane, Inc.*, 2019 WL 2008675, at *6–7 (S.D. Fla. Mar. 15, 2019); *Tillman v. Advanced Public Safety, Inc.*, 2016 WL 11501680, at *4 (S.D. Fla. Nov. 14, 2016); *Thomas v. Tyco Int'l Mgmt. Co., LLC*, 262 F.Supp.3d 1328, 1340 (S.D. Fla. 2017); *Villaman v. United Parcel Serv., Inc.*, 2019 WL 922704, at *6, n.2 (S.D. Fla. Feb. 8, 2019).

[7] Several district courts within the Eleventh Circuit have rejected *Aery* and adopted the heightened actual violation standard announced in *Kearns*. *See, e.g.*, *Graddy v. Wal-Mart Stores East, LP*, 237 F.Supp.3d 1223, 1226–28 (M.D. Fla. 2017); *Butterfield v. Jetblue Airways Corp.*, 2020 WL 5627389, at *1 (S.D. Fla. Aug. 17, 2020); *Goodwin v. Dyncorp Int'l LLC*, 2015 WL 12672085, at *3, n.6 (N.D. Fla. Mar. 30, 2015); *Obukwelu v. Tallahassee Memorial Healthcare, Inc.*, 2015 WL 11110552, at *3 (N.D. Fla. June 25, 2015); *Berber v. Wells Fargo Bank, N.A.*, 2019 WL 7944421, at *4 (S.D. Fla. Jan. 2, 2019).

Fla. 1999)); *accord Graddy*, 237 F. Supp. 3d at 1226–27 (recognizing that when "[t]he Supreme Court of Florida has not addressed" a conflict between Florida's district courts of appeal, the court "must attempt to apply the law as the Supreme Court of Florida would.").  The question before this Court, then, is whether the Supreme Court of Florida would adopt the good faith, objectively reasonable standard from the Fourth District Court of Appeals' decision in *Aery*, or the actual violation standard from Second District Court of Appeals' decision in *Kearns*.  As explained further below, this Court finds that the plain language of section 448.102(3) of the FWA would lead the Supreme Court of Florida to adopt the actual violation standard from *Kearns*.  Notably, this is the precise conclusion that neighboring district courts have reached when faced with the same question.  *See, e.g.*, *Obukwelu*, 2015 WL 11110552, at *3 (concluding that the Supreme Court of Florida would adopt *Kearns* because of the plain and unambiguous language of section 448.102(3), Florida Statutes); *Graddy*, 237 F. Supp. 3d at 1227–28 (same).

The analysis begins with examining the statutory language.  "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Id.* (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)); *see Golf Channel v. Jenkins*, 752 So. 2d 561, 564 (Fla. 2000) ("It is a fundamental principle of statutory construction that where a statute is plain and unambiguous there is no occasion for judicial interpretation.").  Section 448.102(3) of the FWA prohibits an employer from retaliating against an employee because the employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is **in violation** of a law, rule, or regulation."  Fla. Stat. § 448.102(3) (emphasis

added).  The plain text of this provision unambiguously states that an employer's activity, policy, or practice must be "**in violation** of a law, rule, or regulation."  *Id.* (emphasis added).  There is no ambiguity surrounding the words "in violation of"; the phrase simply carries an ordinary meaning, just as *Kearns* held.  *See Black's Law Dictionary* (11th ed. 2019) (defining "violation" as "[a]n infraction or breach of the law" as well as "[t]he act of breaking or dishonoring the law"); *Merriam-Webster's Collegiate Dictionary* 1396 (11th ed. 2007) (defining "violation" as "the act of violating" and indicating in the definition of "violate" that "violating" means "break[ing]" or "disregard[ing]"); *see also Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc) (Courts must presume that the legislature "said what it meant and meant what it said.").  Were this Court to follow the competing approach, it would have to insert words like "alleged" or "suspected" into Section 448.102(3).  But this Court is not in the business of re-writing statutes—that is the job of the democratically-elected Florida legislature.

Indeed, traditional canons of statutory interpretation support the Court's reading. For example, comparing Section 448.102(3) with other Florida whistleblower provisions reinforces that the legislature carefully and deliberately selected the words "in violation of" and did not intend for those words to secretly encompass alleged or suspected violations.  Section 448.102(2) of the FWA—i.e., the subsection immediately preceding the subsection at issue in this case—expressly provides relief only where an employee passes information to a governmental agency investigating "an **alleged violation** of a law" by the employer.  Fla. Stat. § 448.102(2) (emphasis added).  Likewise, Florida's whistleblower statute for public employees offers protection to employees who blow the whistle on "any violation **or suspected violation** of any federal, state, or local law, rule,

or regulation."  Fla. Stat. § 112.3187(5)(a) (emphasis added).  These two statutory provisions confirm that the Florida legislature understands how to unambiguously provide protection and redress for whistleblowers who expose an *alleged* or *suspected* violation of a law, rule, or regulation.  Yet, with that, it becomes clear under the legal maxim *expressio unius est exclusio alterius*[8] that the legislature deliberately chose to forego including any qualifier like *alleged* or *suspected* when drafting section 448.102(3) of the FWA.  *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("[W]here [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Accordingly, on the foundation that the Supreme Court of Florida would "give effect to the language the [l]egislature has used," the Court is persuaded by AHF's argument that the actual violation standard from *Kearns* controls.  *Baker v. State*, 636 So.2d 1342, 1343 (Fla. 1994).  What this means is that, to establish the first element of her *prima facie* FWA case, Pierre must establish that she objected to conduct that actually violated a law, rule, or regulation.

### B.  Pierre did not Engage in a Statutorily Protected Activity.
#### 1.  Pierre Cannot Raise Legal Arguments for the First Time in her Response to AHF's Motion for Summary Judgment.

In her Complaint (DE [1-1]), Pierre alleges AHF retaliated against her because she objected to certain conduct by Moe—conduct which Pierre contends violated the Department of Justice's Pharmacist's Manual (the "DOJ Pharmacist Manual"), 21 C.F.R. § 1306.05, and Section 465.015, Florida Statutes.  (Compl. (DE [1-1]), at ¶¶ 23–25).

---

[8] Expressio unius est exclusio alterius is a canon of statutory interpretation whereby "the mention of one thing implies the exclusion of another."  *U.S. v. Castro*, 837 F.2d 441, 442 (11th Cir. 1998).

During her sworn deposition, Pierre testified that her written objection to Moe's use of other employees' Symphony credentials—which Pierre cast in her November 29 Email and her January 16 Email—was the only alleged statutorily protected activity she was alleging in this lawsuit:

> Q:   You just testified that you believe that you engaged in whistleblowing activity when you complained that [Moe] was using other [employees'] user credentials to log on and to fill work flow at Central Fill; is that correct?
>
> A:   That's correct.
>
> Q:   Are there any actions that [Moe] undertook that you complained about that you believe also constituted a violation of a law, rule or regulation? . . .
>
> A:   No.
>
> Q:   All right.  So the only complaint that you asserted to management that forms the basis and foundation for your contention that you're a whistleblower, relates to the information you communicated regarding [Moe's] use of log-in credentials, correct?
>
> A:   Correct.

(DE [37-3] at 138:11–139:6).

Yet, for the first time in this litigation, Pierre seeks to broaden the scope of the objected-to conduct to include "failing to report missing controlled substances" and "discriminatory comments made by [Moe]."  (Resp. DE [48] at 2).  Pierre also seeks to broaden the universe of purported laws, rules, and regulations that AHF allegedly violated to include Sections 465.0265(b), 465.0266(3), and 465.0266(4.b) of the Florida Statutes, along with the Civil Rights Act and the Florida Civil Rights Act.  *Id.* at 13–15.

However, as AHF correctly points out, the appropriate procedural avenue for Pierre to raise these new theories and factual bases for liability would have been to amend her

12

Complaint under Federal Rule of Civil Procedure 15. *See* (Reply (DE [52]), at 1–2). But she never did so, and to permit such a surprise at this stage of the litigation would be patently unfair to AHF and its ability to defend.[9] *See, e.g.*, *Shannon v. Nat'l R.R. Passenger Corp.*, 2018 WL 8221663, at *6, n.12 (S.D. Fla. June 27, 2018) (holding that plaintiff "cannot now change her theory in her opposition to Defendant's motion for summary judgment"); *Mitchell v. Pilgrim's Pride Corp.*, 817 Fed. Appx. 701, 708 (11th Cir. 2020) (affirming district court's refusal "to consider certain allegations in [plaintiff's] response in opposition to summary judgment" because, if plaintiff "sought to stake his FMLA and disability claims on" a "new factual basis," then "he should have amended his complaint to state as much") (citing *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 779 (11th Cir. 2014)); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004) (holding that a plaintiff may not amend her complaint through argument in an opposition to defendant's motion for summary judgment); *McGirt v. Broward College*, 2017 WL 1153849, at *7 (S.D. Fla. Mar. 28, 2017) ("If [plaintiff] believes the City committed other Public Records Act violations, he should have amended his Complaint to allege them. But he did not, and he cannot do so now.").

Accordingly, in analyzing the merits of Pierre's FWA claim and in addressing the arguments in the parties' briefing, the Court will only consider whether Moe's use of other

---

[9] Separately, Pierre's attempt at this stage of the litigation to include AHF's alleged "fail[ure] to report missing controlled substances" as a basis for her FWA claim is also improper because Pierre never objected to this alleged conduct. In her November 29 Email, Pierre complained that Moe's jokes about employees stealing controlled substances was inappropriate and unprofessional. Although Pierre mentioned "controlled substances" in the November 29 Email, she never complained that Moe (or anyone at AHF) in fact failed to report missing controlled substances. If anyone blew the whistle on a failure to report missing controlled substances, it was Hammer. *See* (DE [49-3]), at 13–24. Pierre cannot point to Hammer's possible whistleblowing and claim it as her own. *See Bush v. Raytheon Company*, 2009 WL 10669904, at *7 (M.D. Fla. Sept. 8, 2009) ("To prove a claim under the Whistleblower's Act . . . Bush must prove that Raytheon acted against him **because of his objections**.") (emphasis added).

employees' Symphony credentials violated (1) the DOJ Pharmacist Manual, (2) 21 C.F.R. § 1306.05, and (3) Section 465.015, Florida Statutes.

    2. <u>Pierre has not Shown an Actual Violation of a Law, Rule, or Regulation</u>.
       a. <u>The DOJ Pharmacist Manual</u>.

First, the Court agrees with AHF's argument that the DOJ Pharmacist Manual does not qualify as a "law, rule, or regulation" for purposes of the FWA.  Section 448.101(4) of the FWA defines a "law, rule, or regulation" as "any **statute** or **ordinance** or any **rule** or **regulation** adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business."  Fla. Stat. 448.101(4) (emphasis added). The DOJ Pharmacist Manual is not a statute, ordinance, rule, or regulation.  Indeed, pages two and six of the DOJ Pharmacist Manual provide that it "is not a legal document," but rather "a guidance document" meant to "assist pharmacists in their understanding of the Federal Controlled Substances Act and its implementing regulations as they pertain to the pharmacy profession."[10]  So, even if AHF or Moe were found to have engaged in conduct inconsistent with the guidance provided in the DOJ Pharmacist Manual, the FWA does not provide Pierre with any protection or redress because the DOJ Pharmacist Manual does not meet the statutory definition of a law, rule, or regulation.  *Cf. Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 896 So. 2d 787, 791 (Fla. 2d DCA 2005) (holding that the Rules Regulating the Florida Bar do not fall within the meaning of a rule under the FWA); *New World Communications of Tampa, Inc. v. Akre,* 866 So. 2d 1231, 1234 (Fla. 2d DCA 2003) (determining that an FCC policy did not qualify as a "law, rule or regulation" under the FWA); *Tyson v. Viacom, Inc.,* 760 So. 2d 276, 277 (Fla. 4th

---

[10] Although neither party provided the Court with the DOJ Pharmacist Manual, it can be found on the DOJ's website at the following publicly available link: https://deadiversion.usdoj.gov/pubs/manuals/(DEA-DC-046)(EO-DEA154)_Pharmacist_Manual.pdf.

DCA 2000) (concluding that the violation of an injunction is not a violation of law under the FWA).

Second, the Court also agrees with AHF's argument that Pierre abandoned the DOJ Pharmacist Manual as a basis for her FWA claim.  In the Motion, AHF makes three arguments attacking Pierre's reliance on the DOJ Pharmacist Manual.  First, AHF argues the DOJ Pharmacist Manual does not meet the FWA's definition of a "law, rule, or regulation" (and, as explained above, the Court agrees).  Second, AHF contends Pierre's failure to identify a specific provision of the DOJ Pharmacist Manual requires judgment in AHF's favor.  And third, AHF argues the only prescription that Pierre ever raised in this case was for an epilepsy medication called Levetiracetam, which is not a "controlled substance," and the DOJ Pharmacist Manual only deals with controlled substances.  In her Response, Pierre's only reference to the DOJ Pharmacist Manual is contained in a single phrase: "Other statutes that may be relevant include The Department of Justice Pharmacist Manual regarding filling improper prescriptions."  (Resp. (DE [48]), at 14).  This is not responsive to AHF's arguments.  The Court therefore agrees with AHF that Pierre has abandoned the DOJ Pharmacist Manual as a basis for her FWA claim.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *see also Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *Nix v. ESPN, Inc.*, 2018 WL 8802885, at \*7 (S.D. Fla. Aug. 30, 2018) (holding that the plaintiff conceded defendant's arguments by failing to respond to them).

Accordingly, because the DOJ Pharmacist Manual is not a "law, rule, or regulation," and separately, because Pierre abandoned the DOJ Pharmacist Manual as a basis for her FWA claim, AHF is entitled to judgment as a matter of law on Pierre's FWA claim as it relates to the DOJ Pharmacist Manual.

> b.  <u>Section 465.015, Florida Statutes</u>.

Pierre likewise fails to show that AHF violated section 465.015, Florida Statutes. Pierre argues AHF violated section 465.015, Florida Statutes, because it "failed to report on multiple occasions, missing controlled substances."   However, for the reasons the Court has already provided, the Court will not address the merits of Pierre's argument. *See supra* (Section III.B.1; footnote 9).  If Pierre wanted this Court (or a jury) to consider whether Moe's alleged failure to report missing controlled substances violated section 465.015, Florida Statutes, then she would have said as much in her complaint or would have amended her complaint to say so.[11]  But she did not.

That notwithstanding, Pierre has not presented any argument nor cited to any authority that would suggest Moe's use of other employees' Symphony credentials could in any way violate Section 465.015.  Nor is the Court independently aware of any such

---

[11] The Court recognizes that, in her November 29 Email, Pierre did, in fact, reference controlled substances. However, her reference was in the context of her complaint about Moe's inappropriate jokes, the subject of which, according to Pierre, was employees stealing controlled substances:

> On more than one occasion, in the time that [Moe] has been here, she has 'joked' about employees stealing controlled substances.  Even going as far as saying "I don't know, someone may be sliding them (Testosterone) into their purse when I am not looking." [A]nd of course followed it up with a chuckle, as though that made her comment okay. I have previously gone to HR in regards to this particular situation, and was simply told that I was 'taking it the wrong way.' I can only speak for myself, but when it comes to my employment, I do not take accusations (serious or in jest) of stealing lightly. This was a legitimate concern and I felt as though I were being brushed off.

(DE [37-12]).  Complaining that Moe's jokes were unprofessional and inappropriate—which, suffice it to say, is a fair complaint—is different than complaining that Moe had failed to report missing controlled substances.

authority.  Accordingly, AHF is entitled to judgment as a matter of law on Pierre's FWA claim as it relates to section 465.015, Florida Statutes.

           c.  <u>21 C.F.R. § 1306.05</u>.

Lastly, Pierre has not made a *prima facie* showing that AHF or Moe violated 21 C.F.R. § 1306.05.  In her Response, Pierre narrows her reliance on Section 1306.05 to subsection (f), which provides as follows:

> A prescription may be prepared by the secretary or agent for the signature of a practitioner, but the prescribing practitioner is responsible in case the prescription does not conform in all essential respects to the law and regulations. A corresponding liability rests upon the pharmacy, including a pharmacist employed by a central fill pharmacy, who fills a prescription not prepared in the form prescribed by DEA regulations.

21 C.F.R. § 1306.05(f).  Pierre argues that Moe violated this subsection in two ways. First, Pierre claims that Moe "los[t] certain controlled substances and [did] not report[ ] them." (Resp. (DE [48]), at 14).  However, as explained above, the Court will not address the merits of Pierre's argument.  *See supra* Section III.B.1; footnote 9; *see also supra* Section III.B.2.b.  Second, Pierre contends that Moe "failed to fill a prescription in the form prescribed by DEA regulations, including filling prescriptions under other pharmacist credentials." (Resp. (DE [48]) at 14).  But Pierre cites to no authority in support of her argument.  For example, she does not cite to any "DEA regulations" with which Moe allegedly failed to comply.   Nor does Pierre cite to any other authority—say, jurisprudence—that would suggest Moe's alleged use of other employees' Symphony credentials to fill prescriptions is somehow a violation of Section 1306.05(f).  The Court therefore finds that Pierre's second argument has no merit.  Accordingly, AHF is entitled to judgment as a matter of law on Pierre's FWA claim as it relates to 21 C.F.R. § 1306.05.

3.  <u>AHF Would Still be Entitled to Summary Judgment Under the Good Faith, Objectively Reasonable Belief Standard</u>.

The Court has already made the determination that, to establish the first element of a *prima facie* FWA case, Pierre must show AHF or Moe actually violated a law, rule, or regulation.  (*See supra* Section III.A).  And, AHF is entitled to judgment as a matter of law on Pierre's FWA claim because Pierre has not made that showing.  Nonetheless, the Court also finds AHF would still be entitled to judgment as a matter of law if the standard that Pierre proposes—the good faith, objectively reasonable belief standard—were to control here.

As stated above, Section 448.101(4) of the FWA defines a "law, rule, or regulation" as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business."  Indeed, "[t]he plain meaning of the FWA and other statutory tools . . . establish that 'protected activity' under the FWA is limited to objections to employers' activities that violate *federal, state, or local statutes, ordinances, rules, and regulations*, and not violations of employers' internal policies."  *Villaman v. United Parcel Serv., Inc.*, 2019 WL 922704, at *5 (S.D. Fla. Feb. 8, 2019) (italics in original).  In *Villaman*, which Pierre cited to this Court as authoritative, the court found that the plaintiff did not have a good faith, objectively reasonable belief of a violation because the plaintiff "did not know of, and was not concerned about, the violation of any U.S. law when she reported the alleged violations to her supervisors."  *Id.* at *7.  The same reasoning and conclusion would be warranted here if the Court were to apply the good faith, objectively reasonable belief standard.

Pierre confirmed in her deposition that, when she authored her November 29 Email and January 16 Email about Moe's use of other employees' Symphony credentials, she was unaware of, and not concerned about, any violation of a "law, rule, or regulation," as those terms are defined in Section 448.101(4) of the FWA.  *See* (DE [37-3]), at 131:14–132:12.  Rather, Pierre was only aware of, and concerned about, general practices and policies in place at every pharmacy where she worked prior to Central Fill Pharmacy:

> Q:   What was the violation of the law, rule or regulation, in your opinion?
>
> A:   Well, the rule that was broken was to not work or do any prescription or any kind of actions under someone's name.
>
> Q:   Are you aware of an internal policy at AHF that prohibits that?
>
> A:   Internally, I'm not sure, but I'm – but from my experience working in pharmacies, that is an overall rule everywhere.
>
> Q:   Okay. So that rule has been in place in every pharmacy where you've worked during your career, right?
>
> A:   Exactly, yes.
>
> Q:   Do you have any information or knowledge independent of that working experience that supports your conclusion that that constitutes a violation of law?
>
> A:   Off the top of my head, no, I do not.
>
> Q:   Okay. Have you ever done any independent research to determine whether or not the conduct alleged in paragraph 6 of [the November 29 Email] constitutes a violation of a law, rule, or regulation?
>
> A:   No, I have not.

*Id.*  Thus, even under the good faith, objectively reasonable belief standard, AHF is entitled to judgment as a matter of law.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Defendant AIDS Healthcare Foundation, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law (DE [36]) is

**GRANTED**.  Judgment for Defendant AIDS Healthcare Foundation, Inc. will be entered separately.  The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

      **DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of October 2020.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF